# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| RAMONA DENISE WILHOITE, ) <br> individually and on behalf of other similarly ) <br> situated, ) <br> ) <br>               Plaintiff, ) <br> ) <br>    v. ) <br> ) <br> MISSOURI DEPARTMENT OF SOCIAL ) <br> SERVICES, by and through its director, ) <br> Robert J. Levy, ) <br> ) <br>               Defendant. <br> <br> RENÉ DAMPIER, *et. al.*, <br> <br>               Intervenors. | Case No. 2:10-CV-03026-NKL |

## ORDER

Before the Court is the Motion to certify class [Doc. # 92] filed by Intervenors René Dampier, *et. al.*, as putative class representatives. For the following reasons, the Court grants the motion.

**I.     Background**

Plaintiff Wilhoite brought the underlying suit in this case, alleging that Missouri Department of Social Services ("Missouri DSS") illegally imposed a lien on a settlement she received without regard to what portion of the settlements constituted reimbursement for medical expenses. The Court granted Plaintiff Wilhoite's motion to certify class on February 7, 2011 [Doc. # 51]. Dampier and the other named Intervenors attempted to intervene,

claiming circumstances similar to Wilhoite, with the distinguishing fact that they had actually paid money to Missouri DSS on their liens. The Court granted Dampier's Motion to intervene on July 15, 2011 [Doc. # 90].

Dampier asserts six counts against Defendant Missouri DSS. Dampier alleges a violation of the rights secured him by 42 U.S.C. § 1396p(a)(1), and seeks damages, disgorgement, payment of litigation costs, a permanent injunction, and a declaration that Missouri DSS's actions and the state statute under which it proceeded (Mo. Rev. Stat. § 208.215.8) violate federal statutes and the U.S. Constitution. Dampier's Count I and II assert violations of 42 U.S.C. § 1983; Count III asserts a violation of 42 U.S.C. § 1988; Count IV seeks a declaratory judgment under 28 U.S.C. § 2201; Count V asserts an improper taking of property under the Fifth Amendment of the U.S. Constitution; and Count VI asserts unjust enrichment.

Section 1396p(a)(1) of the Social Security subchapter on "Grants to States for Medical Assistance Programs" provides:

> No lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, except--
> (A) pursuant to the judgment of a court on account of benefits incorrectly paid on behalf of such individual, or
> (B) in the case of the real property of an individual--
>    (i) who is an inpatient in a nursing facility, intermediate care facility for the mentally retarded, or other medical institution . . . . .

42 U.S.C. § 1396p(a)(1).

Rev. Mo. Stat. § 208.215.8 provides, in relevant part:

> The department of social services or MO HealthNet division shall have a lien upon any moneys to be paid...in settlement or satisfaction of a judgment on any claim for injuries or disability or disease benefits arising from a health insurance program to which the participant may be entitled which resulted in medical expenses for which the department or MO HealthNet division made payment. This lien shall also be applicable to any moneys which may come into the possession of any attorney who is handling the claim for injuries, or disability or disease or benefits arising from a health insurance plan to which the participant may be entitled which resulted in payments made by the department or MO HealthNet division....

Dampier now moves for class certification for the following class:

> Missouri citizens who have received Medicaid and who had liens asserted and/or monies taken by Defendants out of their third party civil settlements or judgments from July 19, 2006 to present, where said settlements or judgments were unrelated to medical care and services, or where the liens asserted and or monies taken by the Defendants were in excess of the amount of said settlement or judgment related to medical care and services, in violation of 42 U.S.C. § 1396p(a)(1).

[Doc. # 92 at 1-2.]

## II.  Discussion

A motion for class certification involves a two-part analysis. First, the movant must demonstrate that the proposed class satisfies the requirements of Rule 23(a):

(1) the class is so numerous that joinder of all members is impracticable,
(2) there are questions of law or fact common to the class,
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Second, Dampier must demonstrate that the proposed class fits into one of the three categories identified in Rule 23(b).

Dampier bears the burden of showing that the Rule 23 requirements are met and that the class should be certified. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). To determine whether class certification is appropriate, the Court must conduct a limited preliminary inquiry, looking behind the pleadings. *Blades v. Monsanto Co.*, 400 F.3d 562, 567 (8th Cir. 2005). "In conducting this preliminary inquiry, however, the Court must look only so far as to determine whether, given the factual setting of the case, if the plaintiffs['] general allegations are true, common evidence could suffice to make out a prima facie case for the class." *Id.* at 566. In considering class certification motions, the Court liberally construes Rule 23(a) and does not resolve the merits of the dispute. *See Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 424 (4th Cir. 2003).

**B.     Mootness**

Missouri DSS argues that Dampier's motion should be denied as moot because of the overlap in potential class members between Plaintiff Wilhoite's class and Intervenors' proposed class. But Missouri DSS cites no law or rule that allows the Court to refuse class certification on that basis. It also makes sense to certify Dampier's class given the prior arguments by Missouri DSS concerning Plaintiff Wilhoite's class. If it becomes apparent later in the lawsuit that the definition of Intervenors' class must be altered because of unnecessary or confusing overlap, the Court can address the situation at that time.

4

### A. Federal Rule of Civil Procedure 23(a)

#### 1. Numerosity

To address the numerosity requirement, the Court should examine the number of persons in a proposed class, the nature of the action, the size of the individual claims and the inconvenience of trying individual claims, as well as other factors. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982).

Defendant Missouri DSS concedes that Intervenors' class definition "does not dramatically reduce" the 40,000 potential class members resulting from Plaintiff Wilhoite's class definition [Doc. # 97 at 4]. Trying each of these cases individually would be highly inconvenient. Therefore, the numerosity requirement of Rule 23(a) is satisfied. *See Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) (certifying a class of between 20 and 65).

#### 2. Commonality

The commonality requirement of Rule 23(a)(2) is satisfied when the legal question "linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Paxton*, 688 F.2d at 561 (citation omitted). To determine whether common questions of law or fact predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings. *Blades*, 400 F.3d at 567.

In *Arkansas Dep't of Health & Human Resources v. Ahlborn*, the U.S. Supreme Court held that the anti-lien prohibition in section 1396p(a) "precludes attachment or encumbrance

of the remainder of the settlement" beyond those proceeds designated as payments for medical care. 547 U.S. 268, 284 (2006). Therefore, the crux of this lawsuit is Missouri DSS's attachment or encumbrance of potential intervenors' settlement funds beyond those proceeds designated as payments for medical care. Five of Dampier's six claims turn on this legal issue.

Because the central legal issue of this suit is common to all potential intervernors, the commonality requirement of Rule 23(a) is satisfied. The distinctions between potential class members pointed to by Missouri DSS – such as the source of members' payment to Missouri DSS – are small in comparison with the commonality of this lawsuit's core issue under *Ahlborn*. If these distinctions ever render class-action litigation too burdensome, the Court will explore the possibility of creating a sub-class or decertifying the class at that time.

### 3. Typicality

The third requirement of Rule 23(a)(3) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a). Typicality means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977). The burden is "easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995) (plaintiffs satisfied the typicality requirement even though they carried different mortgage instruments; important inquiry surrounded mortgage servicer's over-escrowing of funds).

6

The Intervenors' claims – all involving section 1396p(a) – are typical of the proposed class of Missouri Medicaid recipients against whom Missouri DSS asserted liens or from whose settlements or judgments Missouri DSS took monies. Again, the central issue under *Ahlborn* is whether Missouri DSS has attached or encumbered a potential intervenor's proceeds beyond those designated as payments for medical care. On this issue each named Intervenor is typical of the class, regardless of whether those proceeds took the form of a settlement or a judgment. Thus, Missouri DSS's claim that none of the named Intervenors obtained judgments, which differentiates them from potential class members who did obtain judgments, does not prevent Dampier from meeting her burden of establishing typicality.

**4.     Adequacy**

The final requirement of Rule 23(a) is that the class representative and class counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The purpose of the adequacy requirement is to ensure that there are no potential "conflicts of interest between the named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Missouri DSS does not attempt to rebut Dampier's representations regarding the adequacy of class counsel and named Intervenors Dampier, Epperson, Collinge, or Harris [Doc. # 93 at 9-11]. As to remaining named Intervenors, Missouri DSS points to differences in the circumstances of their claims, but presents no argument that these result in a conflict of interest between the putative class members and the named Intervenors. Missouri DSS

7

argues that Intervenors Mitchell and Dickerson did not in fact pay money on the liens asserted against them, that Intervenor Stidham raises a derivative claim, and that Intervenors Forest and Esry do not meet the class definition because their lien payments occurred before the time window in that definition. The Court has already dismissed some of Dickerson's and Mitchell's claims [Doc. # 134], and the distinctions pointed to by Missouri DSS may eventually prove grounds to dismiss further claims or create sub-classes. But for the time being, each named Intervenor retains an interest in obtaining a finding that Missouri DSS violated section 1396p(a)(1). Missouri DSS has not rebutted this by articulating a theory under which any named Intervenor has a contrary interest. Therefore, Dampier has met her burden of establishing the adequacy requirement under Rule 23(a).

B.   **Federal Rule of Civil Procedure 23(b)**

In addition to meeting the requirements of Rule 23(a), a case must meet the requirements of one of the subsections of Rule 23(b) in order to proceed as a class action.

Dampier first asks the Court to certify the Intervenor class under Rule 23(b)(2). That Rule allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23 (b)(2). Where a class seeks monetary relief, it can proceed under this Rule, if at all, only where that relief is "incidental to the injunctive or declaratory relief" and not for individualized awards of monetary damages. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2557 (2001).

8

Here, the putative class seeks compensatory damages and disgorgement of the amount of each Missouri DSS lien that was improper under section 1396p(a)(1), and that amount will vary among class members [Doc. # 91 at 12, 16]. This is like the backpay sought in *Walmart*, which the Court considered individualized relief that did not satisfy the Rule. *See id.* Thus, certification is improper under Rule 23(b)(2).

Dampier asks in the alternative that the Court consider certification under Rule 23(b)(1). That Rule allows class certification where individual actions would either (1) establish incompatible standards of conduct for the opposing party or (2) be dispositive of the interests of other class members or would substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23 (b)(1).

Dampier claims allowing individual actions would "trap [Defendants] in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." *Jones v. American General Life and Acc. Ins. Co.*, 213 F.R.D. 689, 697 (S.D. Ga. 2002). But this does not follow from Dampier's complaint. Although two courts could render inconsistent interpretations of the legal consequences of Missouri DSS's actions, Dampier has not established that those judgments could be incompatible. That is, Dampier has not indicated that a court would ever interpret any law to *compel* Missouri DSS to impose liens that another court might find improper. Thus, Missouri DSS could always ensure compliance with court orders by refusing to impose any type of lien that a court has held improper.

Dampier also argues that "varying decisions would affect the individual class members' ability to protect their interests as they would be bound by the decisions made in actions to which they were not party." [Doc. # 97 at 11]. But Dampier does not attempt to show a possible situation in which this would be the case, given the protections of the Due Process Clause of the U.S. Constitution. Thus, Dampier has failed to show that certification under 23(b)(1) is appropriate.

Dampier last asks the Court to consider certifying this class under Rule 23(b)(3). That Rule provides that a class can be certified if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts commonly refer to these two requirements as "predominance" and "superiority." *See Pichler v. UNITE*, 228 F.R.D. 230 (E.D. Pa. 2005).

The predominance requirement of Rule 23(b)(3) "trains on the legal or factual questions that qualify each class member's case as a genuine controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*.

Looking at the issues of fact and law presented by Dampier's and the putative class members' claims reveals that they have much in common. The crux of this lawsuit is Missouri DSS's attachment or encumbrance of potential intervenors' settlement funds
10

beyond those proceeds designated as payments for medical care. Five of Dampier's six counts depend on the finding of such a violation under section 1396p(a)(1). The named Intervenors and the members of the proposed class share the same interest in this lawsuit: obtaining a finding that Defendant violated section 1396p(a)(1).

That the amount of money Missouri DSS improperly encumbered or took, under Dampier's theory of the case, will vary among class members does not undermine the importance of a class action to resolve the common legal issues, at a minimum. As to Missouri DSS's argument that whether any portion of any given lien applies to settlements unrelated to medical care is an individual inquiry, this is inherent in class actions, which must always determine whether a particular individual meets the class definition. But for intervenors who do meet the class definition, the Court's resolution of the legality of Mo. Rev. Stat. § 208.215.8 and Missouri DSS's policy under federal law will answer the question of liability as to each class member. To the extent that damages prove individualized such that individual questions begin to predominate, decertification of the class at the damages stage may be appropriate, as may be the creation of subclasses.

Meanwhile, Missouri DSS does not attempt to contest the superiority of the class action device under these circumstances. If all potential class members filed separately, there would be thousands of individual actions each relying on identical conduct by Missouri DSS, with many of them asserting relatively small claims. Given the large number of potential intervenors and the commonality of their claims, certifying the class will allow a more

11

efficient adjudication of the controversy than would individual adjudications. For all of these reasons, the Court certifies this class action under Rule 23(b)(3).

### III. Conclusion

Accordingly, it is hereby ORDERED that the Motion to certify class [Doc. # 92] filed by Intervenors as putative class representatives is GRANTED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: October 21, 2011  
Jefferson City, Missouri