UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| RAMONA DENISE WILHOITE, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 2:10-cv-03026-NKL |
| MISSOURI DEPARTMENT OF SOCIAL SERVICES, by and through its director, Ronald J. Levy, *et al.*, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| Rene Dampier, *et al.*, | ) ) | |
| Intervenors. | ) | |

**ORDER**

Pending before the Court is Plaintiffs' motion for sanctions, Doc. 286.[1] Plaintiffs request that the Court impose sanctions on Defendant Missouri Department of Social Services ("DSS"). For the following reasons, the motion is granted in part and denied in part.

**I.     Background**

This case was filed in January 2010 to address DSS' practice of asserting liens on third-party personal injury settlements obtained by Medicaid recipients. The Court

---

[1] Intervenors join in Plaintiffs' motion. "Plaintiffs" as used throughout this order will refer to both Plaintiffs and Intervenors.

1

approved the parties' settlement agreement in November 2013. Since then, administration of the settlement agreement has been ongoing.

On December 9, 2014, the Court held a teleconference to address Plaintiffs' motion for an order compelling DSS to issue checks to remaining unpaid class members. [Doc. 279]. According to Plaintiffs, class members' settlement checks were not being timely issued under the terms of the settlement agreement. They requested that the Court enter an order compelling DSS to issue payment to the remaining class members on or before December 15, 2014. Throughout the December 9 teleconference, DSS represented that there was no way to speed up the payment of refunds due under the settlement agreement. DSS stated that while a mechanism existed to issue checks outside of DSS' bi-weekly payment schedule, to avail oneself of that procedure, one would have to be a registered vendor with the state. As none of the class members were pre-existing vendors, DSS stated that it would take longer to issue the checks through this alternate system than through DSS' general process. Based on that representation, the Court denied the motion to expedite payment.

Subsequently, Plaintiffs filed this motion for sanctions, requesting monetary sanctions in the amount of $53,416.99, $967.50 in attorneys' fees incurred by class counsel relating to the motion for order to expedite payment, and $4,267.50 in attorneys' fees incurred in relation to the motion for sanctions. Plaintiffs state that documents produced to counsel by the State of Missouri pursuant to a Sunshine Request reveal that state agencies may request checks outside of the bi-weekly issuance schedule through the SAM II Financial System. [Doc. 286-1]. They state that there are additional procedures

2

in place to request that emergency manual checks be issued. *Id.* Plaintiffs contend in light of this information that DSS' representations during the December 9, 2014 teleconference were unjustified and warrant sanctions under Federal Rule of Civil Procedure 11 or, alternatively, pursuant to the Court's inherent power to punish persons who abuse the judicial process.

## II. Discussion

Federal Rule of Civil Procedure 11 provides that a court may impose sanctions for representations made in "a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it." Fed. R. Civ. P. 11(b). Though DSS made written filings in conjunction with the teleconference on December 9, none of the filings addressed DSS' ability to issue checks to claimants in an expedited manner. Therefore, Rule 11 does not address the situation before the Court and Plaintiffs' motion must be pursued according to their alternative theory, that the Court should impose sanctions on DSS according to its inherent power to punish persons who abuse the judicial process. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 41 (1991) ("Rule 11 . . . governs only papers wiled with a court.").

Federal courts have inherent power "to fashion an appropriate sanctions for conduct which abuses the judicial process." *Id.* at 44-45. "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* at 43 (quotations omitted). District courts are accorded substantial deference to determine whether sanctions are appropriate. *Willhite v. Collins*, 459 F.3d 866, 869 (8th Cir. 2006);

*American Builders & Contractors Supply Co., Inc. v. Roofers Mart, Inc.*, 2012 WL 2992627, at *2 (E.D. Mo. July 20, 2012). However, courts must be careful to exercise their inherent powers with restraint and discretion, an essential element of which is imposing appropriate sanctions for misconduct. *Plaintiffs' Paycol Steering Committee v. Bayer Corp.*, 419 F.3d 794, 802 (8th Cir. 2005) (quoting *Chambers*, 501 U.S. at 44-45).

The facts surrounding Plaintiffs' motion are undisputed by the parties.[2] Prior to the December 9 teleconference, counsel for DSS conferred with Jennifer Tidball. Ms. Tidball is DSS Deputy Director and former Director of DSS' Division of Finance and Administrative Services. Ms. Tidball informed counsel that she did not believe that DSS had an internal mechanism to expedite payment in this situation. [Doc. 292-2]. During the teleconference, DSS repeatedly represented to the Court that no procedure existed for DSS to expedite the issuance of class members' checks without risking additional payment delays. During the conference, the Court acknowledged surprise that no method existed to immediately issue checks, but the Court expressly relied on counsel's unequivocal representation that no such method existed. It is now clear that DSS had access to procedures to expedite checks, contrary to counsel's representation to the Court.

DSS contends that the representations made to the Court during the December 9 teleconference were in good faith and based on the knowledge available to DSS at the time of the hearing. Counsel argues that because DSS had only three and a half business

---

[2] Additionally, neither party has requested a hearing on the motion. In light of the agreement between the parties regarding the facts surrounding the motion and the lack of request for a hearing, the Court has resolved the motion based on parties' briefing.

4

hours to prepare for the teleconference, its inquiry into available payment methods and counsel's representations to the Court were reasonable.

While the Court understands the time constraints defense counsel and DSS faced in preparing for the teleconference, they did not seek additional time to obtain accurate information and they did not in any way qualify the representation made to the Court such as saying "given the limited time we have this is the best we can do for now," or " we are not sure but we don't think there is an alternative." Had they so qualified their representation, a further investigation would have been ordered. Instead, defense counsel, on behalf of DSS, stated unequivocally that no alternative payment system existed that could speed up the payment of the settlement. Given the facially questionable nature of the representation, the ability of Plaintiffs to find the alternative payment system information by a Sunshine request, and DSS' failure to explain how they could not find the information in their own system, the Court concludes, at a minimum, that the statements made were not reasonably based on readily available information. Specifically, Ms. Tidball, as the director of DSS, had extensive experience with the administration and finances of DSS and had full access to any information she did not personally know. If she was unsure of the scope of options available to DSS to issue emergency payments, she had an obligation to investigate those options and not merely represent to counsel that DSS was incapable of expediting payment. Even if that investigation could not be completed prior to the teleconference, DSS had an obligation to inform the Court that they were not sure what options were available because of the limited time DSS had to prepare for the teleconference.

5

At a minimum, the Department failed to make a reasonable effort to supply accurate information, but nonetheless made the representation unequivocally, insisting that nothing more could be done. Sanctions do not exist exclusively to deter inappropriate attorney conduct, but may be imposed in response to the party's actions. *See* Fed. R. Civ. P. 11(c) ("[T]he court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."); *see also Business Guides Inc. v. Chromatic Comm. Enterprises, Inc.*, 498 U.S. 533, 549 (1991) ("Quite often it is the client, not the attorney, who is better positioned to investigate the facts supporting a paper or pleading.").

The Court is particularly concerned about DSS' cavalier approach here, given that this lawsuit arose out of DSS' failure to comply with *Arkansas Department of Health and Social Services v. Ahlborn*, 547 U.S. 268 (2006). As indicated in the Court's earlier order [Doc. 182], Missouri imposed liens on third party personal injury settlements obtained by Medicaid recipients, without regard for the settlement amount that was allocated to medical expenses. A virtually identical system in Arkansas was struck down by the Supreme Court in *Ahlborn* which affirmed the Eighth Circuit's finding that such a system violated federal law. Although DSS was aware of the *Ahlborn* opinions, there is evidence it took no action to change its system because its administrators were too busy.

DSS' failure to provide accurate information to the Court, was particularly egregious because Defendants were on notice from Plaintiffs' motion that at least one of the class members was facing significant hardships as a result of the payment timeline, as she was relying on the settlement check to prevent foreclosure on her home. [Doc. 279,

6

p. 2]. During the teleconference, Plaintiffs also mentioned that a number of the class members were counting on the money from the settlement to afford modest holiday celebrations. While a four day delay in payment may often be insignificant to some, in this case it certainly was not, particularly given the age of the case and settlement.

In denying Plaintiffs' motion to expedite during the December 9, 2014 teleconference, the Court noted that it "denied Plaintiffs' motion to expedite payment based on Defendants' representation that an attempt to speed up payment could result in further delayed payments." [Doc. 282]. The Court's order was specifically premised on DSS' representation that expedited payment would be impossible and risk further delays. This misrepresentation justifies monetary sanctions.

Plaintiffs request sanctions in the amount of one-third of the total amount of outstanding refunds on December 9, 2014, to be distributed to four divisions of legal aid services around the state. According to Plaintiffs, this formula justifies an award of $53,416.99. "[T]he cornerstone of imposing a monetary sanction . . . should be the selection of an amount no greater than sufficient to deter future misconduct by the party." *Plaintiffs' Baycol Steering Committee v. Bayer Corp.*, 419 F.3d 794, 808 (8th Cir. 2005) (quotation omitted).

Plaintiffs contend that as of December 9, 2014, 130 claimants remained unpaid with outstanding claims totaling $161,896.66. DSS states that the only lien refunds and checks outstanding as of December 9 consisted of those owed to 94 class members who were to receive $50 or $175 settlements, and seven additional claimants: Tamara Simmons, Kathleen Laramie, Debbie Bradley, Jennie Burdge, Angeline Infante, Esther

7

McCune, and Robert Montgomery. [Doc. 292, p. 2 n.1]. The outstanding claims identified by DSS amounted to approximately $60,000. *Id.* DSS identified these same claimants in its suggestions in opposition to Plaintiffs' motion to expedite. [Doc. 281]. In its briefing, Plaintiffs did not identify any additional class members who had not received payment as of December 9. Because Plaintiffs did not respond to DSS' claim that only 101 claims remained outstanding as of December 9, the Court will assume Defendants' facts concerning the number of claims outstanding.

Taking all factors into account, including but not exclusively the amount of claims outstanding at the time of the December 9 phone conference, the Court concludes that a sanction of $30,000 is appropriate. Given the budget of DSS and its substantial control over facts frequently relevant to litigation in the federal courts, a meaningful consequence is necessary to ensure that similar misconduct is not repeated. The $30,000 is to be distributed to the four divisions of Missouri legal aid services in proportion to the percentage of class members residing within the geographical boundaries of each.[3] Hopefully this modest amount will be sufficient to prevent future misconduct by DSS in the federal courts.

Plaintiffs may also recover reasonable attorneys' fees expended in relation to the motion for order to expedite payment and motion for sanctions. *See Chambers v.*

---

[3] Missouri legal aid services represents low-income and elderly Missouri citizens. This client base overlaps significantly with Plaintiffs, all of whom were Medicaid recipients. Therefore, the Court concludes that awarding the money to Missouri legal aid services constitutes "the next best use for indirect class benefit . . . consistent with the nature of the underlying action and with judicial function." *In re BankAmerica Corp. Securities Litigation*, 775 F.3d 1060, 1067 (8th Cir. 2015) (quotations omitted) (describing how District Courts are to allocate *cy pres* distributions).

*NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("Indeed, '[t]here are ample grounds for recognizing … that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel.'" (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980))). Defendants are ordered to pay Plaintiffs $5,235 in attorneys' fees.

**III.   Conclusion**

For the reasons set forth above, Plaintiffs' motion for sanctions is granted in part and denied in part. DSS is ordered to pay Plaintiffs $5,235 in attorneys' fees, and $30,000 to be distributed to Missouri legal aid services as described above.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  May 28, 2015
Jefferson City, Missouri